May it please the court, Albert Israel representing Richard Spellberg, the appellant. Your honors, there's a very important rule of interpretation that we must keep in mind, I believe, in this case. And it's in the Otter case at page 17 of our brief that words used in a policy of insurance are to be interpreted according to the plain meaning which a layman would ordinarily attach to them, that is, the policy should be read as a layman would read it, and not as might be analyzed by an attorney or an insurance expert. In this case, taking the insurance policy that's before us and looking at the renewal provision, a lay person, such as Dr. Spellberg did, would look at that policy and believe that he had benefits beginning at age 66 if he met the three conditions, which he did. They admit he did. We have no one before the court, there was no one before the court with home life insurance that expressed even an opinion of an insurance company as to what this policy and what these provisions meant. We had three declarations that were submitted by representatives of Phoenix Insurance. Mr. Israel, I want to make sure that I understand Dr. Spellberg's position. Dr. Spellberg was receiving the disability payments under the original policy, and the original policy also said that once they began making those payments, he was forgiven the obligation of making any further payments under the premium payments. Is that correct? That's correct. And so Dr. Spellberg's position is that at age 65, as long as he was working 30 hours, paying the premiums and furnishing proof of renewal at the time of income, that he could, that he was, that at his option, he might renew this policy for an additional 10 years, which would give him 10 more years of disability payments and relieve him of any obligation to pay any premium for an additional 10 years. Well, Your Honor, that is a question that has to be determined whether or not he is relieved of the payments. There's a conflict. If you take the waiver provision that is in the basic law. Well, what's your position, counsel? My position right now would be that he has three obligations in connection with that renewal. One is to pay the premium in effect, which he willingly did. He paid it under protest, but he'd pay it. And the second would be he gave that up, and he also gave up any right to the inflation rider, meaning that the benefits would be at 12-6, which is where they were at the time that he became age 65, but there would be no further increases. So there was a change that took place at age 65, after age 65. But looking at the policy, anybody reading this policy at the beginning would have to reasonably assume, in the absence of language that said new disability, new occupation, that he was going to continue to be covered in the occupation that he submitted his application for, as clearly stated, invasive cardiologist. What would be the effect of the maximum benefit period provision? Well, if the court does not believe that it conflicts with the other provision, I think it has to be read as applying to the basic policy of up to age 65. The renewal provision had its own maximum benefit conditions, and those were that he satisfy those three conditions, and he had to do it annually. It would be speculative and hypothetical for the insurance company at the very beginning of this policy to say that it would go beyond 65, because we don't know if Dr. Stolberg is going to work at 66, he's going to work at 67, or through 75. So I think it makes perfect sense that they could state that limit as to the basic policy that was in effect and the policy that they were putting in effect. In order to reach the conclusion you're arguing for, the maximum benefit period has to either be waived or of no force in effect, or what has to happen to the maximum benefit period in order for us to reach the result you're arguing for? The court has to give credence to the renewal provision. It has to mean something. It doesn't mean a new policy. He could go out and get a new policy without the conditions that Holm or Phoenix imposed in this case. You look at the COLA or the inflation rider, it talks about benefits that were preexisting as continuing after age 65. You have to put yourself in the shoes of Dr. Stolberg and look at that policy. Or a reasonable policyholder. That's kind of what we look at, don't we? How would a reasonable policyholder read it? That's correct. I understand from your briefs how Dr. Stolberg reads it, but we look at a reasonable policyholder, don't we? Well, I think that that's true. And I think that the other thing that I wanted to mention was that we have to look at the correspondence that Dr. Stolberg received from the insurance company immediately following turning 65 and when he was applying for renewal. And the most telling correspondence is from the first person, the claims rep, the person that was lowest on the totem pole, that wrote him a letter. That didn't come until a month and a half later when legal counsel for Union Central, who also wasn't involved with the issuance of the policy, comes up with these two new conditions. They came up with a new condition that he had to have sufficient income to justify the policy. That wasn't anywhere. I wondered about that. Was that in the policy any place that you have to have, I think that he had to have $200,000 or something of annual income in order to cover what he was seeking? But I didn't see that in policy. Nowhere in the policy. He qualified for the policy when he was age 53 and continued to qualify for it until he became disabled. Yeah. But the policy had very specific provisions that if he became totally disabled, as he did, before age 63, which was the situation, that then the payments would stop at age 65. And that's very, very clear from the policy. And then the language goes on about the right to renew, provided that after 65 you're working 30 hours per week, wasn't it? That's right. I wonder, well, what happened to the total disability? Would that just go away and then you became able to work 30 hours a week? Or maybe the total disability could go away and you could be cured of that and you would be able to work. And I think that was the theory, perhaps, of the lower court. But that's the problem in this case. Terms are being filled in here that aren't written. And the insurance company had the opportunity to make this a clear and understandable policy, and it didn't. Had it done so, we wouldn't be here today. Dr. Spellberg wouldn't have these reasonable expectations. So you're claiming that at least it's ambiguous, and if that's the case, it should be resolved according to the contention of a reasonable policyholder, which your client is. We're claiming that also, Your Honor. We have two arguments. One, that the policy is clear. The maximum benefit language pertains to the existing policy up to age 65. The conditions of renewal govern the period thereafter. It's on an annual basis if you meet the three conditions. And if that isn't so, then there's got to be a conflict. And if there's a conflict, the policy has to be construed in Dr. Spellberg's favor. Conflict by conflict. You mean ambiguity, perhaps? Ambiguity. Okay. Please serve the rest of my time. Okay. That's fine. Thank you, counsel. Ms. Lawson. Good morning. May it please the Court, Linda Lawson appearing on behalf of El Polis. I would respectfully submit that this is about reasonable expectations. Referring the Court's attention to the record, specifically at page 906, which is Dr. Spellberg's application. In that application, at question 11, there is a specific inquiry in terms of the period for the maximum benefit that he is requesting. He had an opportunity to pick either to age 65 or lifetime. He picked to age 65. Where is that at 906? At 906. And where does that show up? At question 11. Number 11. Yes, Your Honor. Monthly income, maximum benefit period to age 65. I see it. Sickness to age 65. I don't know what that other one is. Wearing a pierce or something? Waiting period. Waiting period. And it would be a 90-day waiting period for each of them. And so, again, in that specific application question, Dr. Spellberg had the opportunity to extend the maximum benefit period. Which provision I would submit is crystal clear. And he chose not to. This is a man who, unfortunately, became totally disabled and, pursuant to the provisions of the policy, was paid full benefits pursuant to the terms up through and including age 65. The renewal provision is a valuable provision because Dr. Spellberg only asked for benefits to age 65. What HOME, through the administration of Union Central provided, is that following the exhaustion of the total disability benefits, an individual insured has the opportunity, if he is working 30 hours, if he can demonstrate income, and if he pays the premium for that age, he can renew the policy. He or she can renew the policy. Specifically going to the question you posed, Your Honor, it was simply a mistake when the lower-level claims person asked for income. When they saw the portion that said earned income, they thought it went back to proving it up. When legal counsel at Union Central got involved, they immediately rectified it within a matter of weeks, saying that was a mistake. He simply has to show income to, in fact, demonstrate that he is working. But other than that, he only needed to pay the premium that was associated with someone his age. Why the renewal is so valuable is there is absolutely no evidence of insurability required. To this day, I am presuming that Dr. Spellberg remains totally disabled as an invasive cardiologist. He simply is not entitled to any further benefits for that disability because he has exhausted the maximum benefit for that disability. If, on the other hand, he renews the policy and at age 68, 70, he's in a car accident, he is entitled and unable to perform his occupation at the time of that disability, he is entitled, pursuant to the maximum benefit provision, which still stays in full force in effect. Because the disability arose post age 63, he's entitled to two full years of benefits, 24 months, as specified in the maximum benefit period. So even though in his application he only asked for a maximum benefit period to age 65, this renewal provision, if he opts for it, provides for further supplemental income up through and including age 75. I would respectfully request the court to not only review the policy as a whole, which I believe the district court did, in fact, do. I also would respectfully request the court to look at the California Supreme Court cases, certainly cited in the district court order, specifically, excuse me, AIU Insurance, Bank of the West, and even Bay Cities. In Bay Cities, the court specifically said that any rule that rigidly presumed ambiguity from the absence of a definition would be illogical and unworkable. When counsel says that now what Union Central is doing is adding the word new disability, it is simply explanation. He is asking this court to negate, to nullify, to eliminate a crystal clear provision in the policy providing for maximum benefits. And coming up with, I think, is not reasonable in the first instance, certainly not objectively reasonable and clearly beyond what the law is and what these clear policy provisions state. Any questions from the court? I don't think we do. Thank you. Thank you, Your Honor. Mr. Israel? Yes, Your Honors. This is the same scenario that we had in the district court when Judge Cooper said, I hear what you're saying, counsel, for Phoenix, but I don't see it anywhere in the policy. What we have here doesn't appear anywhere in the policy. You have to look at the policy as Dr. Spellberg would look at it, and you don't see the word new. You don't see further disability. What do we do with the fact that under the original policy there was a maximum benefit? You apply it. Are you suggesting that the renewal trumps that language? It could trump it, but it could also be read in conjunction with it. It could be read as applying to the policy benefits up to age 65. It's a new ballgame in terms of maximum benefit. But if Dr. Spellberg had the option of choosing lifetime benefit, which I assume he would have paid a much, much higher premium, or to age 65, the renewal benefit sort of converts the age 65 limit to an unlimited benefit, doesn't it? No, it doesn't convert it to lifetime. It converts it to 75. But that is different from an age 65. But, Your Honor, we're dealing with a provision that, in fact, was in the policy. Whether or not the application said age 65 or lifetime, the renewal provision remained in the policy, and we have to deal with it. He had benefits to 75. What benefits did he have? There's nothing in the record that establishes the words new or further disability. There's nothing. What language are you relying upon to say he had benefits to age 75? He had a right to renew between 65 and 75. That's right. Is that what you mean by benefits? That's right. That's the difference. But the benefit he had was the right to renew, isn't it? And that's the only benefit he had. Isn't that right? A right to renew and continue the benefits as it is written. As it is written. He only had to satisfy three conditions. Those are the questions. Thank you.
judges: Farris, Thompson, Bybee